## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| CABLE NEWS NETWORK, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| HAITI LIVE NETWORKS, LLC, | ) | |
| ENTERPRISE ENGINEERING, LLC, | ) | |
| YVAN JOSEPH, and DOMAIN | ) | |
| NAMES INTERNATIONAL, LLC | ) | |
| d/b/a INTRUST DOMAINS, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Cable News Network, Inc. ("Plaintiff" or "CNN"), states the

following for its complaint against Haiti Live Networks, LLC ("Haiti Live

Networks"), Enterprise Engineering, LLC ("Enterprise"), Yvan Joseph ("Joseph"),

and Domain Names International, LLC d/b/a InTrust Domains ("InTrust")

(collectively referred to as "Defendants").

## SUBSTANCE OF THE ACTION

1.      This is an action at law and in equity for trademark infringement,

unfair competition, trademark dilution and injury to business reputation, deceptive

trade practices, and cybersquatting, arising under the federal Lanham Act, 15

U.S.C. §§ 1051 *et seq.* (the "Lanham Act"), the Anticybersquatting Consumer

Protection Act, 15 U.S.C. § 1125(d) (the "ACPA"), the Georgia antidilution

statute, O.C.G.A. § 10-3-451, the Georgia Uniform Deceptive Trade Practices Act,

O.C.G.A. §§ 10-1-370 *et seq*., the applicable antidilution laws of the several states,

and the common law.

### THE PARTIES

2.      Plaintiff Cable News Network, Inc. is a corporation organized and

existing under the laws of the State of Delaware with its principal place of business

at One CNN Center, Atlanta, Georgia 30303.  Plaintiff is the owner of the

trademark HEADLINE NEWS and a family of marks consisting of or

incorporating the term HLN, including the HLN word mark and the mark HLN &

Design shown below (the "HLN Marks").



3.      Upon information and belief, Defendant Joseph is an individual of the

age of majority and resides at 77 East Church Street, Bergenfield, New Jersey

07621.  On information and belief, Joseph is, and at all times relevant to this

2

Complaint was, the manager and an officer of Enterprise Engineering, LLC and the president of Haiti Live Networks, LLC.  On further information and belief, Joseph directed, controlled, participated in, engaged in, performed, authorized, approved, ratified, actively and knowingly caused, and was the moving, active, conscious force behind the acts of Enterprise Engineering, LLC and Haiti Live Networks, LLC.

4.     Upon information and belief, Defendant Enterprise Engineering, LLC ("Enterprise") is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business at 1355 15th Street, Suite 270A, Fort Lee, New Jersey 07024.  Upon information and belief, Enterprise Engineering, LLC is the registrant of the domain name <haitilivenetworks.com>, which features use of the trademarks HLN and HLNTV in connection with broadcasting-related products and services which is confusingly similar to Plaintiff's use of its HLN Marks.

5.     Upon information and belief, Defendant Haiti Live Networks, LLC ("Haiti Live Networks") is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business at 1355 15th Street, Suite 270A, Fort Lee, New Jersey 07024.  Upon information and belief, Haiti Live Networks, LLC operates the website available at <haitilivenetworks.com>, which

features use of the trademarks HLN and HLNTV in connection with broadcasting-related products and services which is confusingly similar to Plaintiff's use of its HLN Marks.

6.      Upon information and belief, Defendant Domain Names International, LLC d/b/a InTrust Domains is a corporation organized and existing under the laws of the State of Colorado with its principal place of business at 11605 Meridian Market View, Unit 124-134, Falcon, Colorado 80831.  On information and belief, InTrust Domains is the registrant of the domain name <hlntv.com>, which resolves to the website available at <haitilivenetworks.com>.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction under section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction over Plaintiff's related state and common law claims pursuant to 28 U.S.C. §§ 1338 and 1367.

8.      This Court has personal jurisdiction over Defendants because, on information and belief, Defendants do business in this State, have committed tortious acts in this State, and have otherwise established contacts within this State making the exercise of personal jurisdiction proper.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

4

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**A.    Plaintiff's Well-Known HEADLINE NEWS and HLN Marks.**

10.    Plaintiff CNN is among the world's leaders in news and information delivery.  Plaintiff provides news and information via its well-known television programming services, including CNN and HLN, as well as on the Internet. Plaintiff's websites operated by Plaintiff and/or its subsidiaries feature the latest multimedia technologies, from live video streaming to audio packages to searchable archives of news features and background information.  Nielsen Online recently named Plaintiff's website located at <cnn.com> the Internet's most frequently-visited news gateway, with the website's homepage generating 60 percent more unique visitors than those of its competitors.

11.    Plaintiff's well-known HEADLINE NEWS cable television news channel first aired in 1982 as CNN2, a companion station to Plaintiff's well-known cable news channel CNN, before the name was changed to HEADLINE NEWS shortly thereafter.  Plaintiff's HEADLINE NEWS became well known for its innovative format, airing 30-minute newscasts around the clock.  Beginning in 2005, Plaintiff's HEADLINE NEWS channel added highly popular opinion and pop-culture news programming to its traditional rolling news format.

12.     At least as early as 2008, Plaintiff began promoting its well-known

HEADLINE NEWS television and Internet news and information services under

the HLN Marks.  Since that time, the HLN Marks have served as distinctive

indicators of Plaintiff's programming and cable, broadcast, and online transmission

services for news and information.

13.     As of July 2009, Plaintiff's services offered under the HLN Marks

were available in over 95 million households across the United States and in at

least 39 countries around the world.  Plaintiff's television programming offered

under the HLN Marks is syndicated to network television affiliates across the

United States, and since the mid-2000's, has been available internationally to

viewers in South America and Asia via cable and satellite transmission.

14.     Plaintiff's online news and information services provided in

connection with the HLN Marks are also available throughout the United States

and the world.  Links to streaming audiovisual content and programming featuring

news and other information offered under the HLN Marks can be accessed at the

web page <cnn.com/hln>.

15.     Plaintiff also provides online services in connection with its HLN

Marks through the social networking website Twitter.com.  Since at least as early

as October 15, 2009, Plaintiff has provided news and information by posting

electronic messages through its Twitter account under the name HLNTV.  To date,

Plaintiff's HLNTV Twitter account has nearly 16,000 followers.

16.     Plaintiff is the owner of United States trademark Registration No.

3,791,012 for the mark HLN for "entertainment services, namely, provision of

ongoing multimedia programs in the field of news and current events distributed

via various platforms across multiple forms of transmission media," filed on

December 12, 2008, registered on May 18, 2010, and claiming a date of first use of

December 17, 2008.  A true and correct copy of the registration certificate is

attached as **Exhibit 1**.

17.     Plaintiff also owns United States trademark Registration No.

3,804,101 for the HLN mark for "cable television and satellite broadcasting

services, streaming of audio, video and audio/video materials over the Internet,

other than broadcast of live sporting events or live collegiate sporting activities and

the streaming over the Internet of live sporting events or live collegiate sporting

activities," filed on December 12, 2008, registered on June 15, 2010, and claiming

a date of first use of December 17, 2008.  A true and correct copy of the

registration certificate is attached as **Exhibit 2**.

18.     Plaintiff owns United States trademark Registration No. 3,791,013 for

the mark HLN & Design for "entertainment services, namely provision of ongoing

multimedia programs in the field of news and current events distributed via various platforms across multiple forms of transmission media," filed on December 12, 2008, registered on May 18, 2010, and claiming a date of first use of December 17, 2008.  A true and correct copy of the registration certificate is attached as **Exhibit 3.**

19.    Plaintiff also owns United States trademark Registration No. 3,804,102 for the mark HLN & Design for "cable television and satellite broadcasting services, streaming of audio, video and audio/video materials over the Internet, other than broadcast of live sporting events or live collegiate sporting activities and the streaming over the Internet of live sporting events or live collegiate sporting activities," filed on December 12, 2008, registered on June 15, 2010, and claiming a date of first use of December 17, 2008.  A true and correct copy of the registration certificate is attached as **Exhibit 4**.

20.    Plaintiff also owns United States trademark Registration No. 3,889,724 for the mark HLN NEWS AND VIEWS for "entertainment services, namely provision of ongoing multimedia programs in the field of news and current events distributed via various platforms across multiple forms of transmission media," filed on April 22, 2010, registered on December 14, 2010, and claiming a

date of first use of December 17, 2008.  A true and correct copy of the registration certificate is attached as **Exhibit 5**.

21.     Each of the registrations of the HLN Marks identified above in paragraphs 16-20 is valid and in full force and effect.

22.     HLN, its programming, and its on-air talent have received significant recognition in the broadcast journalism industry and have been nominated for and awarded numerous prestigious awards.

23.     For example, in 2008, 2010, and 2011, HLN and certain of its journalists were recognized by the Alliance for Women in Media, who present the Gracie Allen Awards (the "Gracies") to honor programming by women, for women, and about women.

24.     Over the past several years, HLN anchors and reporters also have won prestigious awards including the GLAAD Media Award for Excellence in Media, the Genesis Awards presented by The Humane Society, and the YWCA's Salute to Women of Achievement Award.

25.     Plaintiff has expended substantial sums in connection with developing consumer brand recognition for the HLN Marks.

26.     As a result of the foregoing, Plaintiff's HLN Marks have acquired a high degree of recognition and distinctiveness, and symbolize the high quality broadcasting and information services offered by Plaintiff.

27.     Consumers are familiar with and identify Plaintiff's HLN Marks with Plaintiff, and, by reason of this identification, goods and services associated with the HLN Marks are understood by consumers to be produced, marketed, and distributed under Plaintiff's authority or otherwise derived from Plaintiff.

28.     Plaintiff's HLN Marks are an important factor employed by consumers in identifying the source of Plaintiff's cable, broadcast, and online news and information services, and are distinctive of those services.

29.     As a result of these and other uses, the HLN Marks are entitled to a broad scope of protection.

**B.     Defendants' Unlawful Activities.**

30.     On information and belief, the domain name <hlntv.com> was registered by InTrust on July 28, 2010, after Plaintiff commenced use of its HLN Marks in interstate commerce and internationally.

31.     On information and belief, InTrust serves as a privacy service for one or more of the other Defendants in this action, namely, Joseph, Enterprise, and Haiti Live Networks (collectively, the "Joseph Defendants").

32.     The <hlntv.com> domain name directs to the website at the domain name <haitilivenetworks.com> (the "Haiti Live Networks Website").

33.     The Haiti Live Networks Website features use of the marks HLN and HLNTV in connection with broadcasting goods and services.  True and correct copies of the Haiti Live Networks Website home page and representative pages from this site depicting use of the HLN and HLNTV marks are attached as **Exhibit 6**.

34.     The Haiti Live Networks Website includes embedded links to streaming audiovisual content and programming featuring news and other information and prominently displaying the mark HLN.

35.     The Joseph Defendants offer for sale goods and services for transmitting television programming via the Internet, including television programming featuring news and current events, in connection with the mark HLN.  The Joseph Defendants' goods and services are offered for sale to consumers through various channels, including on the Internet through the Haiti Live Networks Website, by phone, and through dealers located in various states and abroad.

36.     On information and belief, the Joseph Defendants commenced offering these goods and services on or around July 2009, subsequent to Plaintiff's first use and application for its HLN Marks.

37.     In connection with their television broadcast and transmission services and related goods, the Joseph Defendants offer a television channel and programming content under the mark HLNTV.

38.     Like the Plaintiff, the Joseph Defendants have created an account with the social networking website Twitter.com to promote their goods and services offered under the HLN mark.  On information and belief, the Joseph Defendants registered a Twitter account under the name HLNmedia.  On further information and belief, the Joseph Defendants did not begin posting messages using their HLNmedia Twitter account until December of 2009.

39.     The Joseph Defendants' HLN and HLNTV marks are identical to or nearly identical to Plaintiff's HLN Marks.

40.     The Joseph Defendants' HLN and HLNTV marks are used in connection with goods and services for the broadcasting and transmission of television programming over the Internet to be viewed by consumers online and on television, as well as in connection with a television channel and programming content, the same services with which Plaintiff uses its HLN Marks.

41.     The Joseph Defendants' goods and services are not licensed, authorized, sponsored, endorsed, or approved by Plaintiff.

42.     Plaintiff's HLN Marks were used extensively and continuously throughout the United States before the Joseph Defendants offered for sale or sold their goods and services in connection with the HLN and HLNTV marks.

43.     The Joseph Defendants' goods and services are related to the services sold or licensed by Plaintiff and are sold through similar channels of trade.  The Joseph Defendants sell their goods and services on the Internet on a website that is accessible via a domain name that incorporates Plaintiff's HLN mark, namely <hlntv.com>.

44.     The Joseph Defendants' goods and services are likely to deceive, confuse, and mislead purchasers and prospective purchasers into believing that the Joseph Defendants' unlicensed and unauthorized goods services are licensed by, authorized by, or in some manner associated with Plaintiff.  The likelihood of confusion, mistake, and deception engendered by the Joseph Defendants' unlicensed and unauthorized goods and services are causing irreparable harm to Plaintiff.

45.     The Joseph Defendants' unlicensed and unauthorized goods and services offered under the HLN and HLNTV marks are calculated to trade on the

goodwill and commercial magnetism of CNN's reputation and identity in this

District and elsewhere.  The Joseph Defendants also are attempting to pass off their

goods and services as those of CNN or its licensees.

46.     The Joseph Defendants willfully, intentionally, and maliciously have

used Plaintiff's HLN Marks, or have adopted imitations of the HLN Marks, and

combined said imitations with other material likely to cause and enhance

confusion, and have otherwise deliberately attempted to pass off their unlicensed

and unauthorized goods services as provided or licensed by CNN.

### COUNT I
### FEDERAL TRADEMARK INFRINGEMENT (as to the Joseph Defendants)

47.     Plaintiff repeats and incorporates by reference the allegations in

paragraphs 1-46.

48.     The Joseph Defendants are using confusingly similar imitations of

Plaintiff's HLN Marks in connection with unlicensed and unauthorized products

and services.  This conduct is likely to cause confusion, deception, and mistake by

creating the false and misleading impression that the Joseph Defendants'

unlicensed and unauthorized goods and services are distributed by Plaintiff or are

associated or connected with Plaintiff, or have the sponsorship, endorsement or

approval of Plaintiff.

49.    The Joseph Defendants have used confusingly similar imitations of Plaintiff's federally registered marks in violation of 15 U.S.C. § 1114, and the Joseph Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Plaintiff's goodwill and reputation as symbolized by Plaintiff's federally registered marks, for which Plaintiff has no adequate remedy at law.

50.    The Joseph Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's federally registered marks to Plaintiff's great and irreparable injury.

51.    The Joseph Defendants have caused and are likely to continue causing substantial injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief and to recover actual damages, the Joseph Defendants' profits, enhanced profits and damages, costs and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, 1117.

## COUNT II
## FEDERAL UNFAIR COMPETITION (as to the Joseph Defendants)

52.    Plaintiff repeats and incorporates by reference the allegations in paragraphs 1-51.

53.     The Joseph Defendants' unlicensed and unauthorized goods and

services have caused and are likely to cause confusion, deception, and mistake by

creating the false and misleading impression that the Joseph Defendants' goods

and services are distributed by Plaintiff, or are associated or connected with

Plaintiff, or have the sponsorship, endorsement, or approval of Plaintiff.

54.     The Joseph Defendants have made false representations, false

descriptions, and false designations of origin in violation of 15 U.S.C. §§ 1125(a),

including, but not limited to, the Joseph Defendants' commercial use of Plaintiff's

HLN Marks, or confusingly similar imitations thereof.  The Joseph Defendants'

activities have caused and, unless enjoined by this Court, will continue to cause a

likelihood of confusion and deception of members of the trade and public and,

additionally, injury to Plaintiff's goodwill and reputation, for which Plaintiff has

no adequate remedy at law.

55.     The Joseph Defendants' actions demonstrate an intentional, willful,

and malicious intent to trade on the goodwill associated with Plaintiff to the great

and irreparable injury of Plaintiff.

56.     The Joseph Defendants' conduct has caused, and is likely to continue

causing, substantial injury to the public and to Plaintiff, and Plaintiff is entitled to

injunctive relief and to recover actual damages, profits, enhanced profits and

damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116 and 1117.

## COUNT III
## VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT (as to InTrust)

57.     Plaintiff repeats and incorporates by reference the allegations in paragraphs 1-56.

58.     On information and belief, by registering and using the domain name <hlntv.com>, InTrust has registered, trafficked in, and used a domain name that is confusingly similar to Plaintiff's HLN Marks.

59.     On information and belief, InTrust registered the domain name <hlntv.com> and has used it with the intent to divert consumers from Plaintiff's online locations to websites accessible under a domain name that could harm the goodwill represented by Plaintiff's HLN Marks.  On information and belief, InTrust registered the domain name <hlntv.com> with the bad faith intent to profit by creating a likelihood of confusion as to source, sponsorship, affiliation, or endorsement of the website.

60.     On information and belief, InTrust registered the domain name <hlntv.com> as a privacy service for one or more of the Joseph Defendants.

61.     InTrust's actions constitute cyberpiracy in violation of 15 U.S.C.
§ 1125(d).

62.     The unauthorized registration and use of the domain name described
herein has caused, and unless preliminarily and permanently enjoined, will
continue to cause, irreparable injury to Plaintiff and to the goodwill associated with
Plaintiff's HLN Marks.

63.     Because InTrust's infringing conduct is causing and is likely to cause
substantial injury to the public and to Plaintiff, Plaintiff is entitled to injunctive
relief, and to recover either statutory damages under 15 U.S.C. § 1117(d) or
InTrust's trebled profits, together with Plaintiff's costs and Plaintiff's reasonable
attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## COUNT IV
## FEDERAL TRADEMARK DILUTION (as to the Joseph Defendants)

64.     Plaintiff repeats and incorporates by reference the allegations in
paragraphs 1-63.

65.     Plaintiff's HLN Marks are distinctive, strong and famous and became
so before the Joseph Defendants' activities described in this Complaint.

66.     The Joseph Defendants are making unlicensed and unauthorized
commercial use in commerce of Plaintiff's HLN Marks, and the Joseph
Defendants' activities have caused and are causing dilution of the distinctive

18

quality of Plaintiff's HLN Marks.  The Joseph Defendants' conduct erodes the

public's exclusive identification of the HLN Marks with Plaintiff and tarnishes and

degrades the positive associations and prestigious connotations of the marks.

67.     On information and belief, the Joseph Defendants willfully intended

to trade on Plaintiff's reputation and to cause dilution of Plaintiff's HLN Marks.

68.     Plaintiff therefore is entitled to injunctive relief and to recover actual

damages, profits, enhanced profits and damages, costs, and reasonable attorneys'

fees under 15 U.S.C. §§ 1125(c), 1116, 1117.

**COUNT V**
**STATE TRADEMARK DILUTION AND**
**INJURY TO BUSINESS REPUTATION (as to the Joseph Defendants)**

69.     Plaintiff repeats and incorporates by reference the allegations in

paragraphs 1-68.

70.     Plaintiff has extensively and continuously promoted and used the

HLN Marks throughout Georgia and the United States, and the HLN Marks have

thereby become distinctive, well-known symbols of Plaintiff's services.

71.     The Joseph Defendants' unauthorized use of confusingly similar

marks dilutes and is likely to dilute the distinctiveness of the HLN Marks by

eroding the public's exclusive identification of these marks with Plaintiff and by

tarnishing and degrading the positive associations and prestigious connotations of the HLN Marks.

72.     The Joseph Defendants are causing and will continue to cause irreparable injury to Plaintiff's goodwill and business reputation, and dilution of the distinctiveness and value of the HLN Marks in violation of O.C.G.A § 10-1-451, as well as the laws of the antidilution statutes of the several states.  Plaintiff therefore is entitled to injunctive relief, damages and costs, as well as, if appropriate, enhanced damages and reasonable attorneys' fees.

## COUNT VI
## UNFAIR AND DECEPTIVE TRADE PRACTICES (as to the Joseph Defendants)

73.     Plaintiff repeats and incorporates by reference the allegations in paragraphs 1-72.

74.     The Joseph Defendants have engaged in deceptive trade practices within the meaning of the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. §§ 10-1-370 *et seq.* by: (1) passing off their goods and services as those of Plaintiff; (2) causing a likelihood of confusion or misunderstanding as to the source, origin, or sponsorship of the parties' respective services; (3) causing a likelihood of confusion or of misunderstanding as to the affiliation, connection, or association of the Joseph Defendants or their goods and services with Plaintiff or

its services; (4) using deceptive representations or designations of origin in connection with the Joseph Defendants' goods and services; (5) representing that the Joseph Defendants' goods and services have the sponsorship or approval of Plaintiff, which they do not have; and (6) engaging in other conduct that similarly creates a likelihood of confusion or of misunderstanding to consumers, potential consumers, and the public.

75.    The Joseph Defendants' conduct in passing off their goods and services as those of Plaintiff, causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, or approval of the Joseph Defendants' goods and services, causing a likelihood of confusion as to the Joseph Defendants' affiliation, connection, or association with another, and otherwise damaging the public also constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of the unfair and deceptive trade practices statutes of the several states.

76.    The Joseph Defendants' unauthorized use of confusingly similar trademark designations is causing and is likely to cause substantial injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief and to recover its costs and reasonable attorneys' fees.

## COUNT VII
## <u>COMMON LAW TRADEMARK INFRINGEMENT</u>
## <u>AND UNFAIR COMPETITION (as to the Joseph Defendants)</u>

77.    Plaintiff repeats and incorporates by reference the allegations in paragraphs 1-76.

78.    The Joseph Defendants' acts constitute common law trademark infringement and unfair competition, and have created and will continue to create a likelihood of confusion to the irreparable injury of Plaintiff unless restrained by this Court.  Plaintiff has no adequate remedy at law for this injury.

79.    On information and belief, the Joseph Defendants acted with full knowledge of Plaintiff's use of, and common law rights to, the HLN Marks and without regard to the likelihood of confusion to customers, potential customers, and the public created by those activities.

80.    The Joseph Defendants' actions demonstrate a willful intent to trade on the goodwill associated with Plaintiff's HLN Marks to the great and irreparable injury of Plaintiff.

81.    As a result of the Joseph Defendants' acts, Plaintiff has been damaged in an amount not as yet determined or ascertainable.  At a minimum, however, Plaintiff is entitled to injunctive relief, to an award of the Joseph Defendants' profits, and to actual damages under O.C.G.A. § 51-1-6.  In light of the willful and

intentional use of the HLN Marks, and the need to deter the Joseph Defendants from similar conduct, Plaintiff additionally is entitled to punitive damages under O.C.G.A. § 51-12-5.1.

WHEREFORE, Plaintiff CNN prays that:

1.      Defendants and all agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendants, or in concert or participation with Defendants, and each of them, be enjoined, preliminarily and permanently, from:

a.      using the marks HLN and HLNTV in word mark or logo form;

b.      using any other marks confusingly similar to the HLN Marks in connection with Defendants' goods or services;

c.      using any trademark, service mark, name, logo, design, domain name, or source designation of any kind on or in connection with Defendants' goods or services that is a copy, reproduction, colorable imitation, or simulation of or confusingly similar to, or in any way similar to the trademarks, service marks, names, or logos of Plaintiff;

d.   using any trademark, service mark, name, logo, design, domain name, or source designation of any kind on or in connection with Defendants' goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that Defendants' goods or services are produced or provided by Plaintiff, or are sponsored or authorized by or in any way connected or related to Plaintiff;

e.   using any trademark, service mark, name, logo, design, domain name, or source designation of any kind on or in connection with Defendants' goods or services that dilutes or is likely to dilute the distinctiveness of the trademarks, service marks, names, or logos of Plaintiff by eroding their exclusive identification with Plaintiff or tarnishing their positive associations;

f.   passing off, palming off, or assisting in passing off or palming off, Defendants' goods or services as those of Plaintiff, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint; and

     g.     registering or using as an electronic address any URL designation or domain name, including but not limited to the domain name <hlntv.com> and all other domain names incorporating the letter string "HLN," that is confusingly similar to, or dilutive of, any of the trademarks, service marks, names, or logos of Plaintiff.

2.     The Joseph Defendants be compelled to account to Plaintiff for any and all profits derived by Defendants, and for all damages caused to Plaintiff under 15 U.S.C. § 1117, O.C.G.A. § 51-1-6, and the common law;

3.     Based on the Joseph Defendants' willful and intentional use of marks known to be infringing, Plaintiff be awarded treble damages, as provided for by 15 U.S.C. § 1117(a);

4.     The Joseph Defendants be required to pay to Plaintiff the costs of this action and its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and (b), and O.C.G.A. § 10-1-373(b);

5.     The Joseph Defendants be required to pay prejudgment interest dating from service of this Complaint on any profits, damages, and attorneys' fees awarded as provided for in 15 U.S.C. § 1117;

6.      Based on the Joseph Defendants' willful and intentional use of

Plaintiff's mark, and to deter such conduct, Plaintiff be awarded punitive damages

pursuant to O.C.G.A. § 51-12-5.1;

7.      The domain name <hlntv.com> be transferred to Plaintiff;

8.      Based on InTrust's acts of cyberpiracy in violation of 15 U.S.C.

§ 1125(d), Plaintiff be awarded statutory damages if it so elects; and

9.      Plaintiff has such other and further relief as the Court may deem just.


Dated:  April 15, 2011                    Respectfully submitted,

                                          /s/James A. Trigg_____
                                          James A. Trigg, Esq. (#716285)
                                          Jtrigg@ KilpatrickTownsend.com
                                          Alicia Grahn Jones, Esq. (#141415)
                                          Aljones@KilpatrickTownsend.com
                                          Allison Scott Roach, Esq. (#072508)
                                          Aroach@KilpatrickTownsend.com
                                          KILPATRICK TOWNSEND &
                                          STOCKTON LLP
                                          1100 Peachtree Street, Suite 2800
                                          Atlanta, Georgia 30309-4530
                                          Telephone:  (404) 815-6500
                                          Facsimile:   (404) 815-6555

                                          *Attorneys for Plaintiff*

## **Local Rule 5.1 Certification**

Pursuant to Local Rule 5.1, I hereby certify that this Complaint has been prepared in Times New Roman 14 point font.

/s/James A. Trigg
Attorney for Plaintiff